UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT SEATTLE

| | |
|---|---|
| IN RE: PHENYLPROPANOLAMINE (PPA) PRODUCTS LIABILITY LITIGATION, | MDL NO. 1407 |
| | ORDER GRANTING DEFEN-DANTS' MOTION TO DISMISS |
| This document relates to: *Delaughter v. Bayer Corp.,* C03-3877 | |

This matter comes before the court on a motion to dismiss filed by Bayer Corporation on behalf of all defendants. Having considered the pleadings filed in support of and opposition to this motion, the court finds and rules as follows.

A. <u>Deposition Scheduling</u>

The fact discovery deadline in this case was April 22, 2005.[1] According to Bayer and the exhibits attached to its motion, defendants' counsel began trying to schedule depositions of the three fact witnesses – plaintiff Bobby Delaughter, his wife (and plaintiff) Connie Delaughter, and Gerald Renniger – at the end of November, 2004. Bayer's counsel again attempted in January

---

[1] Defendant Bayer has also filed a motion to extend the discovery deadline which, given the court's ruling herein, is stricken as moot.

ORDER
Page - 1 -

2005 to contact plaintiffs' Florida counsel, who responded that he was unavailable through February. Counsel for Bayer sent an additional five email requests for available dates to depose the above witnesses, without receiving an adequate response from plaintiffs' counsel. Eventually Bayer was able to depose Mr. Delaughter; to date, plaintiffs' counsel has not agreed on an available date for the depositions of either Mrs. Delaughter or Mr. Renniger, failing to respond to defendants' email requests as recently as March 20, 2005 and April 14, 2005.

In February 2005 Bayer also began attempts to schedule the depositions of the nine health professionals – treating physicians and an EMT – identified as relevant to this case. The time lines of Bayer's attempts as to each witness are detailed in its briefs in support of this motion. In short, Bayer has to date been unable to complete all depositions, and each deposition that did eventually go forward took several email requests and unreturned phone messages by Bayer to elicit a response by plaintiffs' counsel; several times plaintiffs' counsel canceled a day or two before, or on the day of, the scheduled deposition. Several cancellations resulted in physicians' cancellation fees charged to Bayer's attorneys, and one witness, Dr. Fisk, has refused to reschedule his twice-canceled deposition.

Plaintiffs' counsel offers no valid explanation for their recalcitrance in scheduling depositions. The sum of their response is that Bayer has made a habit of waiting until the last minute, then rushing to schedule depositions before the discovery

deadline lapses. Plaintiffs' "evidence" of this behavior – a list of cases in which both sides' attorneys also appear – proves nothing. Moreover, while plaintiffs' counsel maintains that Bayer waited "11 months" before attempting to schedule depositions, *see, e.g.*, Plaintiffs' Brief in Opposition at 2, Bayer's first attempt came via email at the end of November, 2004 – some five months before the deadline – and that late only at the request of plaintiffs' Florida-based counsel for a reprieve in the wake of Hurricane Ivan.[2]

This type of unresponsiveness in scheduling depositions – particularly in the complicated business of scheduling physicians' depositions – is unacceptable discovery practice. CMO 6 sets out specific procedures by which the parties are to cooperate during discovery – procedures that, as outlined above, plaintiffs' counsel have in this case clearly flouted. Plaintiffs' counsel's unrelenting failure to respond to defendants' discovery requests is a flagrant violation of this court's management order, costing enormous unnecessary energy and expense to both parties, though especially to defendants, and to this court.

B.   <u>Plaintiff's Fact Sheet Revisions and Deposition Errata Sheet</u>

Plaintiffs' counsel's most egregious abuse of the discovery

---

[2] Because plaintiffs raise no issue of fact in their response to defendants' motion, the court finds that oral argument is unnecessary in this case. Plaintiffs' request that they be allowed to depose defendants' counsel is also denied as unnecessary and an obvious attempt to harass defendants' counsel.

ORDER
Page - 3 -

process, however, is set forth in Bayer's "Supplement" to its motion to dismiss. In that brief Bayer documents two instances of attorney misconduct, if not outright ethical violation. The first involves the Delaughters handing to defense counsel at a deposition their handwritten draft of the plaintiff's fact sheet ("PFS"). The responses the Delaughters supplied on that version of the PFS differ in marked, material ways from the final attorney-produced version that counsel had submitted to defendants, to which plaintiffs' counsel had attached the signature page from the original handwritten version. For example, plaintiffs' counsel (1) changed information regarding several dates of ingestion of certain medications (e.g. "May 5, 1997" for Alka-Seltzer Plus Sinus Medicine to "On or about May 10, 1997"); (2) altered whether plaintiffs were aware of expiration dates on the medicine (from several dates certain to "Unknown" on the final PFS); (3) and added an allegation – not present on the handwritten PFS – that plaintiff had ingested Robitussin. The final version also *omitted* facts included in the original, including the identities of several treating physicians, specifics regarding plaintiff's stroke symptoms, and the occurrence of a second, more serious stroke.

In the second instance, plaintiffs' counsel submitted thirty pages of "errata" to Mr. Delaughter's deposition, supplying not just typographical or minor corrections, but materially and in some cases grossly different answers altogether. For example, in response to inquiry regarding whether Mr. Delaughter knew how

1  Robitussin had been added to the final PFS, Mr. Delaughter
2  answered he did not. The errata sheet instead provides "I was on
3  one phone and my wife on the other phone but she done [*sic*] the
4  talking mostly. Connie thought she was supposed to fill out two
5  sets of papers one for the Alka-Seltzer products and one for the
6  Robutssin. When she talked to them in Florida thats [*sic*] when
7  the answers was [*sic*] corrected to be combined in one set of
8  papers. That was her mistake." In another example, Mr. Delaughter
9  was asked whether he remembered any other colors of the packaging
10 of the medication he took; he responded "No, sir; I don't remem-
11 ber." The errata sheet responds "Red, yellow, white and purple,
12 yellow, white, green, yellow and white." Several "no" responses
13 are changed to "yes;" "Well, I'm sure it did" to "No, it did
14 not."
15      Plaintiffs' counsel attempts to explain by submitting that
16 Mr. Delaughter suffers from "multiple severe medical conditions
17 that compromise his ability to perform well under the stressful
18 conditions of a deposition and necessitate multiple drafts of the
19 PFS" as a result of his stroke. Plaintiffs' Brief in Opposition
20 at 2. Yet plaintiffs submit no evidence in support of this
21 assertion, and assure the court that it should not have concerns
22 about Mr. Delaughter's competency. Plaintiffs also try to cast
23 the changes as mere clarifications. As the examples above illus-
24 trate, the variance from the initial version to the final PFS,
25 and from the testimony at deposition to the errata sheet, are far
26 more than mere clarifications; "yes" is not a clarification of

ORDER
Page - 5 -

"no." Moreover, Mr. Delaughter testified at his deposition that he did not at any time speak to his attorneys about the accuracy of his handwritten responses after submitting them. Plaintiffs offer no evidentiary support for their later explanation that the final draft is the result of telephone conversations between Mr. Delaughter and his attorneys.

Defendants do not ask for, and the court will therefore not entertain, the imposition of sanctions for these ethical breaches. Taken together, however, it is clear that at the very least plaintiffs' alterations and omissions of multiple material facts have worked serious prejudice on defendants' ability to mount a defense, by knowingly requiring defendants to proceed with false or incomplete information. Such harm cannot be undone simply by extending the discovery deadline in this case.

C.   Discussion

The applicable standard for dismissal for failure to comply with a court order requires a court to evaluate five factors: "(1) the public's interest in expeditious resolution of litigation; (2) the court's need to manage its docket; (3) the risk of prejudice to the defendants; (4) the public policy favoring disposition of cases on their merits; and (5) the availability of less drastic sanctions." *Malone v. United States Postal Serv.*, 833 F.2d 128, 130 (9th Cir. 1987).

The court finds that these five factors weigh in favor of dismissal. Plaintiffs' continuing delay impedes the resolution of this dispute and the ability of the court to manage its docket,

problems compounded by the complex nature of the multi-district litigation.

The court also finds that plaintiffs' delay is prejudicial to defendants, impairing defendants' ability to discover evidence before it is lost or forgotten, and in the case of Dr. Fisk, possibly preventing defendants from obtaining any testimony at all. Counsel for defendants have also spent an inordinate amount of time and energy trying to schedule depositions – time and energy that could have been spent on substantive litigation matters. In addition, the misinformation supplied to defendants jeopardizes the integrity of defendants' litigation strategy, leading them to build a defense based on facts that have proven untrue.

Less drastic measures, such as an extension of the discovery deadline, are highly unlikely to have any salutary effect on defendants' case, as there is no evidence that plaintiffs' counsel will be any more cooperative going forward, depriving defendants the fair opportunity to mount effective defense.

Finally, while public policy favors resolution of a case on its merits, plaintiffs' counsel's failure to cooperate to allow discovery to proceed does nothing to ensure such resolution; in fact, quite the contrary. Plaintiffs' counsel's dilatory tactics and deliberate supplying of misinformation obscure rather than illuminate the facts that would have enabled resolution on the merits.

For the foregoing reasons, the court GRANTS defendants'

1  motion to dismiss. The motion for an extension of the discovery
2  deadline is stricken as moot.
3      Dated at Seattle, Washington this 16th day of August, 2005.

*Barbara J. Rothstein*

BARBARA JACOBS ROTHSTEIN
UNITED STATES DISTRICT JUDGE

ORDER
Page - 8 -